PEPPER CONSTRUCTION COMPANY, Plaintiff-Appellee, v. CASUALTY INSURANCE COMPANY, Defendant-Appellant (The Central National Insurance Company of Omaha *et al.*, Defendants).

First District (3rd Division)   No. 85—0852

Opinion filed June 25, 1986.

Keck, Mahin & Cate, of Chicago (Gene H. Hansen, of counsel), for appellant.

Sonnenschein, Carlin, Nath & Rosenthal, of Chicago (Eric A. Oesterle and Robert H. King, Jr., of counsel), for appellee.

JUSTICE McGILLICUDDY delivered the opinion of the court:

Defendant, Casualty Insurance Company (Casualty), appeals from an interlocutory order of the trial court dated February 26, 1985, denying a motion to dissolve a preliminary injunction entered October 26, 1984, against it and in favor of the plaintiff, Pepper Construction Company. Defendants Central National Insurance Company of Omaha and Marshall Field & Co. are not parties to this appeal.

In 1977, plaintiff entered into a contract with Marshall Field & Co. to construct a store in Joliet, Illinois. Plaintiff was the general contractor and used various subcontractors. Construction was completed in August 1978, and on January 24, 1979, three sections of the store roof collapsed under heavy snowfall. At the time of the roof collapse, plaintiff was insured by Casualty. Between February 1979 and May 1980, plaintiff, with the knowledge of Casualty, repaired the roof and incurred substantial repair costs.

On October 14, 1981, Marshall Field & Co. filed its second amended complaint against the plaintiff and its subcontractors to recover $233,515.21 in damages to the store and its contents. Counts I through III of the complaint allege breach of contract, breach of contractual warranty and negligence by plaintiff. The remaining counts are directed against various subcontractors. Plaintiff tendered its defense to Casualty which reserved its rights and defenses under the insurance policy. In a letter to plaintiff, defendant specifically denied coverage under the policy for work performed by plaintiff itself, but agreed to defend plaintiff, while at the same time suggesting plaintiff retain other counsel to proceed against the subcontractors for indemnity and

its repair costs.

On August 20, 1984, plaintiff filed a complaint against the defendants for declaratory judgment and other relief, seeking, *inter alia*, a declaration that plaintiff had the right to control its own defense in the Marshall Field litigation. On the same date, plaintiff filed a motion for a preliminary injunction, requesting that, because of a conflict of interest between plaintiff and Casualty, Casualty be ordered to relinquish control of the plaintiff's defense in the Marshall Field litigation, and reimburse plaintiff for its attorney fees in that action. Following a hearing, the trial court on October 26, 1984, granted plaintiff's motion for preliminary injunction.

On December 17, 1984, Casualty presented a motion for reconsideration, seeking to vacate the October 26 order. On February 26, 1985, briefs having been filed by both parties, the trial court denied the motion for reconsideration. This appeal followed. The question presented for review is whether the trial court abused its discretion in refusing to vacate the preliminary injunction.

■ The law in Illinois is that an insurer is obligated to defend an action against its insured when the complaint sets forth allegations which bring the claim actually or potentially within the coverage of the insurance policy. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24.) The duty to defend depends entirely on the allegations of the complaint; thus, even if the insurer knows the allegations to be groundless, false or fraudulent, it still has an obligation to defend. *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335.

■■ There is, however, a limited exception to the duty to defend. When there is a conflict of interest, the insurer should not be obligated, or even permitted to participate in the defense of the case; in such an instance, its obligation to provide a defense is satisfied by reimbursing the insured for the costs of the defense. (*Murphy v. Urso* (1981), 88 Ill. 2d 444, 430 N.E.2d 1079; *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335.) In determining whether a conflict of interest exists, Illinois courts consider whether, in comparing the allegations of the complaint to the policy terms, the interest of the insurer would be furthered by providing a less than vigorous defense to those allegations. (*Nandorf, Inc. v. CNA Insurance Cos.* (1985), 134 Ill. App. 3d 134, 479 N.E.2d 988; *County of Massac v. United States Fidelity & Guaranty Co.* (1983), 113 Ill. App. 3d 35, 446 N.E.2d 584.) Negation of coverage alone is not a sufficient conflict of interest to preclude an insurer from defending its insured. A conflict of interest has been found, however, where an underlying complaint asserts claims that are covered by the insurance policy and other causes which the insurer is required to defend, but which it asserts are not covered by the policy. *Nandorf, Inc.*

*v. CNA Insurance Cos.* (1985), 134 Ill. App. 3d 134, 479 N.E.2d 988.

Such is, as the trial court found in its order granting the preliminary injunction, the conflict posed by the instant case. The amended complaint filed by Marshall Field & Co. requested recovery of damages of $233,515.21: $150,000 in consequential damages and $83,515.21 for repair costs paid to plaintiff.[1] Marshall Field & Co.'s second amended complaint requests recovery of $233,515.21 in damages to "the store and contents." Casualty filed an affidavit acknowledging liability coverage for consequential damages regardless of whether liability is based on plaintiff's own fault or on the fault of its subcontractors.

■■ Casualty relies on the acknowledgment of liability for consequential damages to support its position that the instant case does not involve the clearly opposing interest raised by issues central to the underlying litigation found in *Murphy v. Urso* (1981), 88 Ill. 2d 444, 430 N.E.2d 1079, and other cases which have required mutually exclusive alternatives in order to find a conflict of interests. (See, *e.g., Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335; *O'Bannon v. Northern Petrochemical Co.* (1983), 113 Ill. App. 3d 734, 447 N.E.2d 985.) Casualty thus argues that because it has recognized coverage for consequential damages, the insured and insurer have a uniformity of interests, should plaintiff be found liable at all. Indeed, Casualty posits that its acknowledged liability, $150,000, gives it a greater interest in plaintiff's defense than has the plaintiff, whose potential liability is only $83,515.21. We find absolutely no merit in this analysis.

We will leave aside for the moment the $150,000 for which Casualty acknowledges coverage, and the obvious fact that a finding that the plaintiff has no liability whatsoever for the roof collapse is in the best interests of both the plaintiff and its insurer. As to the amount claimed for damage to the store itself, the plaintiff's interests lie in a finding that it is vicariously liable for work performed by a subcontractor. In that event, Casualty must indemnify it under the terms of the insurance policy. In contrast, Casualty's interest lies in a finding that plaintiff is liable based on work *it* performed. Casualty has denied coverage for that under the reservation of rights, and its liability in the Marshall Field litigation would thus be limited to the consequential damages.

■■ Casualty argues that the question of who is liable for the work on the roof would not be determined in the underlying litigation; thus, another of the factors set out by the supreme court, that the coverage

---

[1]Marshall Field & Co. refused to reimburse plaintiff for the rest of the repair costs, totalling approximately $600,000, for which plaintiff has counterclaimed in the underlying litigation.

issue is central to the underlying litigation, is not found in this case. (*Murphy v. Urso* (1981), 88 Ill. 2d 444, 430 N.E.2d 1079.) We disagree. As plaintiff points out, the complaint filed by Marshall Field & Co. alleges, in counts I through III, causes of action against the plaintiff and, in counts IV through VIII, causes of action against the subcontractors: the architect, steel supplier and contractor, steel joist manufacturer, and steel installer and contractor. Thus, the liability of both plaintiff and its subcontractors would be determined in the underlying litigation, and that decision would also ascertain Casualty's liability under the insurance policy.

■ We therefore agree with the trial court that there is an obvious conflict between the interest of the insurer and the insured as regards the $83,515.21 sought for damage to the store. As the court in *Murphy v. Urso* noted:

> "The particulars of the conflict of interest do not matter, only the fact that there is a conflict at all. The insured has the right to be defended by counsel of his own choosing. A ruling that required an insured to be defended by what amounted to his enemy in the litigation would be foolish." (88 Ill. 2d 444, 454-55, 430 N.E.2d 1079, 1084.)

We thus hold that the trial court did not abuse its discretion in refusing to dissolve the preliminary injunction which required Casualty to relinquish control of the plaintiff's defense in the Marshall Field & Co. litigation, and to reimburse plaintiff for the costs of that defense.

For the foregoing reasons, the order of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI, P.J., and WHITE, J., concur.